IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-2605-WJM-NRN

JULIE REISKIN, and
COLORADO CROSS-DISABILITY COALITION,

     Plaintiffs,

v.

GREYHOUND LINES, INC.,

     Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Julie Reiskin and Colorado Cross-Disability Coalition (jointly, "Plaintiffs") sue Defendant Greyhound Lines, Inc., ("Greyhound") for alleged violations of: (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189; (2) Sections 504 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794–794a; and (3) Parts 6 and 8 of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-601–605, 801–805.  (*Id.* ¶¶ 33–46.)

Before the Court is Greyhound's Motion for Summary Judgment ("Motion"), in which Greyhound requests that the Court enter judgment in its favor and against Plaintiffs on all claims.  (ECF No. 57.)  Plaintiff filed a response to the Motion ("Response") (ECF No. 58), to which Defendant replied ("Reply") (ECF No. 63).  For the reasons explained below, the Motion is granted in part and denied in part.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*, 475 U.S. at 586–587).

## II. BACKGROUND[1]

Greyhound is an inter-city over-the-road bus common carrier that serves

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof. These facts are undisputed unless attributed to a party

2

thousands of destinations.  (ECF No. 58 ¶ 1.)  Every Greyhound bus is equipped with wheelchair seating locations.  (*Id.* ¶ 2.)  To board a passenger who uses a wheelchair, Greyhound bus operators operate a wheelchair lift that brings the passenger from the ground outside the bus into the wheelchair seating area.  (*Id.* ¶ 3.)  The lift is designed to operate electronically, but it can be operated manually if the electronic lift fails.  (*Id.* ¶¶ 4–5.)[2]

### A.     Plaintiff Reiskin's August 28, 2018 Trip

On August 28, 2018, Plaintiff Reiskin attempted to board Greyhound bus number 6572—which was running 90 minutes late—to go from Glenwood Springs to Grand Junction, Colorado.  (*Id*. ¶¶ 26, 31, 35.)  She had purchased a ticket for this trip on Greyhound's website and indicated that she would need a wheelchair spot on the bus.  (*Id*. ¶ 27.)

When she approached the bus to board, the bus operator attempted to deploy the wheelchair lift to enable her to enter the bus, but it failed to deploy.  (*Id.* ¶ 35.)  Then the bus operator attempted to use the lift's manual backup system to engage the lift, but he was unable to get the lift to function.  (*Id.* ¶ 36.)  For forty-five minutes, the bus operator and another Greyhound employee tried to get the wheelchair lift to work so Plaintiff Reiskin could board the bus.  (*Id.* ¶ 38.)  After spending forty-five minutes trying to get the wheelchair lift to work, the bus operator informed Plaintiff Reiskin that he would not be able to get the lift to work.  (*Id.* ¶ 40.)

---

or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Plaintiffs deny ¶¶ 3–5, but their explanation shows that they only wish to make clear that neither the electronic nor manual lift works *all the time*.  (ECF No. 61 ¶ 3–5.)  The Court notes that it is undisputed that the lifts do not work all the time.  (*See* ECF No. 58 ¶¶ 35–37.)

Hoping to find a solution, the bus operator "called everybody"—including the Maintenance Response Desk, dispatch, and Mary Johnson, the Terminal Supervisor of the Denver Greyhound Bus Terminal. (*Id*. ¶¶ 43–44.) The bus operator spoke with Ms. Johnson on the phone, explaining that he hoped she could assist with finding a bus to pick up Plaintiff Reiskin. (*Id*. ¶ 44.) He handed the phone to Plaintiff Reiskin so that she could speak with Ms. Johnson directly, and Ms. Johnson offered to book her on the next bus and to provide a hotel room where she could wait and rest until the bus arrived. (*Id*. ¶ 46.)

Plaintiff Reiskin declined this offer. (*Id*. ¶ 47.) In her deposition, she testified that she declined because she was worried about traveling to and from the hotel and whether she would be able to find a wheelchair-accessible hotel room in Glenwood Springs. (*Id*.) However, Plaintiff Reiskin had checked out of a wheelchair-accessible room only a few hours before she went to the Greyhound bus stop. (*Id*. ¶ 48.) Ms. Johnson then offered to order Plaintiff Reiskin a taxi to travel to and from a local hotel until the next bus arrived, but she declined, claiming there were no wheelchair-accessible taxis in town. (*Id*. ¶ 49.)

Instead of agreeing to take the next bus, Plaintiff Reiskin called a taxi company in Grand Junction and ordered a taxi to pick her up in Glenwood Springs. (*Id*. ¶ 50.)[3] Shortly thereafter, Ms. Johnson offered to have a training bus come to Glenwood Springs for the sole purpose of driving Plaintiff Reiskin to Grand Junction; the training

---

[3] Plaintiffs assert that Greyhound consented to Plaintiff Reiskin calling a taxi, but Greyhound denies this and points out that Plaintiff Reiskin does not require Greyhound's consent to call a taxi. (ECF No. 61 ¶ 84; *see* ECF No. 65 at 7.) The Court resolves this factual issue in favor of Plaintiff at this stage, but does not find it relevant to the resolution of this Motion.

bus was only one hour and thirty minutes away.  (*Id*. ¶ 51.)  Ms. Johnson called the driver of the training bus and had him confirm that his wheelchair lift was operating, which he did by cycling the lift.  (*Id*.)

Plaintiff Reiskin declined this offer as well.  (*Id*. ¶ 52.)  She testified in her deposition that she declined because she "didn't know that the lift worked or that the lift had been cycled," and she had already called a taxi.  (*Id*.)  She told Ms. Johnson that based on the lift's malfunction that day, "she didn't trust Greyhound anymore."  (*Id*.)  And she told the bus operator that he would "hear from her lawyers."  (*Id*.)

Once Plaintiff Reiskin confirmed her intention to wait on her taxi, Greyhound bus number 6572 departed.  (*Id*. ¶ 54.)  Her taxi to Grand Junction cost more than $396.00.  (*Id*. ¶ 55.)  Plaintiffs assert—in the Additional Statement of Disputed Facts section of their Response—that throughout these events she "never requested a reasonable accommodation."  (ECF No. 61 ¶ 87.)

**B.      Other Evidence of Malfunctioning Lifts on Greyhound Buses**

Just like any other piece of mechanical equipment, a wheelchair lift can break or malfunction.  (ECF No. 58 ¶ 7.)  Greyhound has a complaint procedure for passengers to raise concerns about its services, including any issues they encounter with respect to the accessibility features on Greyhound buses.  (*Id*. ¶ 66.)  Greyhound investigates complaints submitted through this process, and Greyhound's Compliance Department reviews "every single" complaint received and ensures each complaint and any large trends indicated by the complaints are addressed.  (*Id*. ¶¶ 67–68.)

Between November 2018 and March 2020, Greyhound received sixteen complaints about its bus accessibility features not operating correctly nationwide.  (*Id*. ¶

5

70.)[4]  Sixteen complaints nationwide represent a very small fraction of Greyhound's services to wheelchair-using customers: approximately 0.037 percent.  (*Id.* ¶ 71.)[5]

In addition to the sixteen accessibility complaints, Plaintiffs also make numerous references to a declaration from a resident of North Carolina who asserts that a wheelchair lift malfunction disrupted his Greyhound bus trip from New Bern, North Carolina, to Atlanta, Georgia in May of 2021.  (ECF No. 43-2 ¶¶ 230–296.)

### III. LEGAL STANDARDS

Under the ADA and Rehabilitation Act the standard for proving discrimination in public accommodation is the same.  *Aubrey v. Koppes*, 975 F.3d 995, 1004 & n.4 (10th

---

[4] Plaintiffs deny this statement; their explanation reads: "*See* Williams Decl. 3 and Ex. 1 (Lift failures are all that apply)."  (ECF No. 61 ¶ 70.)  The Court does not understand Plaintiffs' enigmatic explanation.  The Court's practice standards contain very clear instructions that "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to supporting evidence in the record."  WJM Revised Practice Standards III(E)(4)(b).  "[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).  The Court finds that Plaintiffs have failed to show that there is a genuine dispute that from November 2018 and March 2020 Greyhound only received sixteen complaints about its bus accessibility features not operating correctly nationwide.

[5] Plaintiffs deny this statement but do not make "a specific reference to supporting evidence in the record."  WJM Revised Practice Standards III(F)(3).  Instead, Plaintiffs cite "proposed Amended Complaint," by which the Court can only assume Plaintiffs are referring to an 89-page proposed Amended Class Action Complaint which the Court declined to give them leave to file (ECF No. 43-2).  A citation to allegations in a proposed amended complaint simply does not and cannot create a material issue of fact on summary judgment.  Further, the Court has no obligation to sift through Plaintiffs' evidence to determine if there is a trial-worthy issue as to whether 0.037 percent is an accurate estimate of the frequency of accessibility issues on Greyhound busses.  *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiffs'] arguments for [them].").  "[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross*, 390 F.3d at 1290. Therefore, for the purposes of resolving this Motion, the Court finds that it is undisputed that "[S]ixteen complaints nationwide represent a very small fraction of Greyhound's services to wheelchair-using customers: approximately 0.037 percent."  (*Id*. ¶ 71.)

Cir. 2020). To analyze the sufficiency of these claims, courts apply a three-part test. Plaintiffs must demonstrate: (1) they are "qualified individuals" with a disability; (2) Greyhound is subject to the relevant law; and (3) Plaintiffs were denied the opportunity to participate in or benefit from Greyhound's services, programs, or activities, or were otherwise discriminated against, by reason of a disability. *See, e.g., Havens v. Colorado Dep't of Corrs.*, 897 F.3d 1250, 1262–63 (10th Cir. 2018).

In order to satisfy the third prong as to whether discrimination occurred, three theories of liability are possible: disparate treatment, disparate impact, or failure to make a reasonable accommodation. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016); *Fulton v. Goord*, 591 F.3d 37, 43 (2d. Cir. 2009).

## IV. ANALYSIS

**A.    Federal Law Claims**

In its Motion, Greyhound argues that Plaintiffs cannot be awarded monetary damages because they cannot establish that Greyhound was deliberately indifferent to Plaintiff Reiskin's rights under the ADA or the Rehabilitation Act. (ECF No. 58 at 21–24.) Further, Greyhound argues that Plaintiffs are not entitled to injunctive relief because they have failed to show an ongoing violation of the ADA. (*Id*. at 28–31.)

The Court considers each argument in turn.[6]

1.    Monetary Damages

Though the analyses under the ADA and the Rehabilitation Act are the same,

---

[6] Greyhound also argues that it did not violate the ADA, the Rehabilitation Act, or CADA because it provided Plaintiffs with "meaningful access" to its services. (*Id*. at 24–27.) The Court does not find it necessary to address this argument because the Motion is resolved on other issues.

their remedies differ.  Under Title III of the ADA, a plaintiff may seek only injunctive relief and not monetary damages.  *See Rhodes v. S. Nazarene Univ.*, 554 F. App'x 685, 690 (10th Cir. 2014) (citing 42 U.S.C. § 12188(a)(1)).  The Rehabilitation Act, on the other hand, allows for the recovery of damages where a plaintiff establishes the defendant receives federal funding and was deliberately indifferent to the plaintiff's rights secured by the Act.  *Schoengood v. Hofgur LLC*, 2021 WL 1906501, at *3 (E.D.N.Y. May 12, 2021).

Deliberate indifference is a high standard that is not easily met.  *See, e.g., Randall v. Bd. of Cnty. Comm'rs*, 184 F. App'x 723, 726 (10th Cir. 2006).  The test for deliberate indifference in the context of intentional discrimination consists of two prongs: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  *KG by & through Christine C. v. Santa Fe Pub. Sch. Dist.*, 2013 WL 12330111, at *9 (D.N.M. May 17, 2013) (*citing Barber ex rel. Barber v. Colo. Dept. of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir. 2009)).

Greyhound argues that Plaintiffs cannot establish that it was deliberately indifferent to Plaintiffs' rights under the ADA and the Rehabilitation Act for several reasons.  First, Greyhound points out that the record only reflects one instance of her being unable to successfully complete a Greyhound bus trip; and it is undisputed that both before and after the August 28, 2018 incident, Plaintiff Reiskin had successful Greyhound bus trips and she has even publicly praised Greyhound's staff for their accommodation of disabled passengers.  (ECF No. 58 at 21–22; *see* ECF No. 58-16, 26:6–28:11.)

Second, Greyhound argues that the federal regulations implementing the ADA in

this context recognize that machinery such as wheelchair lifts break and require maintenance like any other mechanism, and not every malfunction is a violation of the ADA. (ECF No. 58 at 22.) For example, 49 C.F.R. § 37.161 requires transportation entities to maintain wheelchair lifts in "operative condition," but further contemplates that sometimes, pieces of machinery break. *See* 49 C.F.R. § 37.161(a)–(c) (stating that lifts must be maintained in operative condition, but that "isolated or temporary interruptions in service or access due to maintenance or repairs" are not prohibited). If the lifts do not function, then the transportation entity needs to repair the lifts "promptly." *Id*. § 37.161(a). The entity may take the bus with the inoperable lift out of service immediately, but it may also keep the lift in service for the remainder of the service day or even for several days under certain circumstances. *Id*. § 37.163(a), (d), (e).

Greyhound points to several cases holding that as a matter of law isolated incidences of wheelchair lift inoperability are not sufficient to show a violation of the ADA, let alone a deliberately indifferent violation of the ADA. (ECF No. 58 at 22–24.) For example, in *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846 (9th Cir. 2001), the mobility-challenged plaintiff used the defendant's buses for transportation in the Portland area. Plaintiff alleged that he was unable to use the wheelchair lifts on the buses because of malfunction on at least five different occasions over several years. *Id.* at 848. The district court entered summary judgment against the plaintiff and in favor of the defendant on the ADA claim, and the Ninth Circuit affirmed the district court. Stating that the "ADA do[es] not contemplate perfect service," the Ninth Circuit noted that 49 C.F.R. § 37.161(c) "establishes that isolated or temporary problems caused by lift malfunctions are not violations of the ADA." *Id.* at 849.

Remarkably, in their Response, Plaintiffs do not respond to Greyhound's arguments based on 49 C.F.R. § 37.161(c) or *Midgett*, 254 F.3d 846.

The record in this case indicates that nationwide the incidences of accessibility issues is very low. (ECF No. 58 ¶¶ 70–71.) Plaintiff Reiskin has not produced evidence showing that she has encountered lift failures except on one occasion, even though she has traveled on Greyhound buses many times. Further, it is undisputed that Greyhound has a complaint procedure for passengers to raise concerns about issues they encounter with its accessibility features. (*Id.* ¶ 66.) And it is undisputed that Greyhound's Compliance Department reviews "every single" complaint received and ensures each complaint and any large trends indicated by the complaints are addressed. (*Id.* ¶¶ 67–68.) Given these facts, the Court is convinced by the reasoning of the Ninth Circuit in *Midgett*:

> [T]he record does not support an inference that Tri-Met violated the ADA with either "deliberate indifference" or "discriminatory animus." To the contrary, the record shows that Tri-Met has the good-faith intention to comply with the ADA, as evidenced by its practices and programs directed at ensuring ADA compliance. Therefore, we affirm the district court's ruling on Plaintiff's claim for damages.

*Midgett*, 254 F.3d at 851.

Thus, the Court finds that, as a matter of law, Plaintiffs cannot show that Greyhound was deliberately indifferent to Plaintiff Reiskin's. Therefore, Plaintiffs claim for monetary damages under the Rehabilitation Act fails as a matter of law. And, as discussed above, monetary damages are not available for Plaintiffs' ADA claim brought under Title III.

Consequently, Plaintiffs are not entitled to monetary damages under either of their federal claims. Thus, the Motion is granted on Plaintiffs claims for monetary

damages under the ADA and the Rehabilitation Act.

### 2. Injunctive Relief

Greyhound argues that Plaintiffs cannot establish that they are entitled to injunctive relief under the ADA because Plaintiffs cannot prove an "ongoing" violation of the ADA. (ECF No. 28–31.) Incredibly, Plaintiffs do not respond to this argument in their Response, in which they do not even mention Greyhound's arguments regarding injunctive relief. (*See generally* ECF No. 61.) Therefore, the Court finds that Plaintiffs have abandoned their claim for injunctive relief. *See*, *e.g.*, *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming dismissal of a claim because the plaintiff had abandoned the claim by not addressing it in his memorandum opposing summary judgment).[7]

But even if Plaintiffs had preserved this argument, the Court finds that they lack standing to seek injunctive relief under ADA or the Rehabilitation Act.[8] The Tenth Circuit has explained that:

> To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. The threatened injury must be "certainly impending" and not merely speculative.

*Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citing City of Los

---

[7] In their Sur-Reply, Plaintiffs argue that they have not abandoned their claim for injunctive relief and point to a proposed Motion to Amend, which the Court has not given them leave to file. (ECF No. 68 at 5.) Plaintiffs also point to their Complaint (ECF No. 1), but allegations in a complaint do not obviate the Plaintiffs' duty to respond to Greyhound's arguments. (ECF No. 68 at 5–6.)

[8] Though the issue has not been raised by either party, the Court has an independent duty to examine its jurisdiction at every stage of the litigation. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Angeles v. Lyons, 461 U.S. 95, 101–02 (1983) and *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000)) (citations omitted for clarity).

Here, the record shows only one instance of Plaintiff Reiskin being unable to complete her Greyhound bus trip. And both before and after the August 28, 2018 incident, Plaintiff Reiskin had numerous successful Greyhound bus trips, without malfunctioning lifts. (ECF No. 58 at 21–22; *see* ECF No. 58-16, 26:6–28:11.) Additionally, the undisputed evidence in the record shows that Greyhound has extensive ADA compliance procedures and that, between November 2018 and March 2020, Greyhound only received sixteen complaints about its bus accessibility features not operating correctly nationwide, representing a very small fraction of Greyhound's services to wheelchair-using customers. (*Id.* ¶¶ 70–71.)

Under these circumstances, the Court finds that Plaintiffs do not have standing to seek injunctive relief because they have not shown a real and immediate threat of being injured in the future. S*ee Phillips v. Tiona,* 508 Fed. Appx. 737, 754 (10th Cir. 2013) ("Because [plaintiff's] sole remedy for a Title III claim is injunctive relief, and he alleged only past exposure to ADA violations, we perceive no error" in district court's dismissal of claim on basis that "court lacked jurisdiction").

Thus, the Court finds that it does not have jurisdiction over Plaintiffs' claims for injunctive relief under the ADA and the Rehabilitation Act. Consequently, Plaintiffs' federal claims for injunctive relief are dismissed without prejudice, and this portion of the Motion is denied as moot.

**B.     State Law Claim**

Because the Court had original jurisdiction over Plaintiffs' ADA claim and Rehabilitation Act claim, it had supplemental jurisdiction over the remaining state law

claims as well.  28 U.S.C. § 1367.

But this case is now in a fundamentally altered procedural posture given that the Court is herein entering judgment against Plaintiffs or dismissing all federal claims.  A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law."  *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005).  Plaintiffs' remaining CADA claim is grounded in state law, and its resolution does not turn on questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Carnegie-Mellon Univ.*, 484 U.S. at 350.  In the interest of comity and federalism, district courts are advised against making "needless decisions of state law."  *TV Commc'ns Network, Inc.*, 964 F.2d at 1028.  If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350).

The instant suit is not yet at the trial stage, so issues of judicial economy and fairness are not implicated here.  *See Carnegie-Mellon Univ.*, 484 U.S. at 350.  Rather,

the issues of comity and federalism are at the forefront because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiffs' remaining claims.  *See McWilliams v. Jefferson Cnty.*, 463 F.3d 1113, 1117 (10th Cir. 2006).  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  The remaining cause of action arises out of a Colorado statute; no federal laws are implicated by these claims.  Thus, there is not a compelling reason to maintain jurisdiction over this suit.

The Court finds that the remaining claim would be better addressed in state court.  *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.  Accordingly, the Court declines to continue to exercise its supplemental jurisdiction over Plaintiffs' CADA claim.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Greyhound's Motion for Summary Judgment (ECF No. 58) is GRANTED IN PART AND DENIED IN PART:

    a. Greyhound's Motion for Summary Judgment as to Plaintiffs' ADA and Rehabilitation Act claims for monetary damages is GRANTED;

    b. The remaining portions of Greyhound's Motion for Summary Judgment DENIED AS MOOT;

2. Plaintiffs' claims for injunctive relief under the ADA and the Rehabilitation Act are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

3. The Court DECLINES to continue to exercise its supplemental jurisdiction over

14

> Plaintiffs' remaining state law claim, thus Plaintiffs' CADA claim is DISMISSED WITHOUT PREJUDICE; and

4. The Clerk shall enter judgment in favor of Greyhound, and against Plaintiffs on Plaintiffs' Rehabilitation Act claim for monetary damages and Plaintiffs' ADA claim for monetary damages, and the Clerk shall terminate this case;

5. All current settings, including without limitation the Final Trial Preparation Conference scheduled for November 23, 2022 and the Jury Trial scheduled to begin on December 12, 2022, are VACATED; and

6. The parties shall bear their own attorney's fees and costs.

Dated this 30th day of June, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge